GOTTLIEB GENNERT

*v.*

EDMUND WUESTNER.

An executory contract made on Sunday is absolutely void and incapable of ratification, and any dealings between the parties upon the basis of it will, so far as completed, be treated as the voluntary acts of the parties which cannot be disturbed, and so far as not completed must be dealt with as if no such contract had been ever made.

On final hearing on pleadings and proofs.

*Mr. William P. Douglass* and *Mr. Joseph A. Beecher*, for the complainant.

*Messrs. Carrick & Wortendyke*, for the defendant.

PITNEY, V. C.

This is a bill for an account of, among other things, certain ·commissions on goods manufactured by the defendant and by him sold to various parties, the right to which depends upon a written agreement entered into between the parties, and bearing ·date the 1st of April, 1890. There were other large transactions between the parties in the way of goods sold and delivered by ·each to the other. As to those the dispute is wholly one of prices.

In answer to the demand for commissions upon sales of the ·defendant's own goods, the defendant set up in his answer that on or about the 1st of January, 1891, after the agreement had been in practical operation between the parties for nine months, the defendant repudiated and rescinded it on the ground that the ·complainant had persistently broken it on his part, and that the complainant acquiesced in this rescission, and from thenceforth the agreement, except as to a lease embodied in it of certain ·lands, was treated by both parties as of no further binding force ·between them.

There was a cross-bill combined with the answer, and a reply by the complainant to the cross-bill, which need not now be ·stated at length.

At the hearing of the cause the defendant offered evidence tending to show that the agreement in question, although dated on the 1st day of April, which occurred on Tuesday, was, in fact, ·executed and delivered on the previous Sunday, and was therefore void. He stated as an excuse why this defence was not set up in his answer that he was not then aware that the agreement was thereby rendered unlawful. The evidence of execution on ·Sunday was excluded at that time because there was no allegation

in the answer to support it, and the complainant had not come prepared to meet it, and I was not satisfied that it was proper to allow such an amendment under the circumstances. Leave was granted to the parties to be heard upon the question of the propriety of the amendment, and briefs were submitted on that point, upon which I concluded that the amendment should be allowed, and I so announced to the respective counsel. In point of fact it never was made, but the parties went to hearing on the question of the date of the execution and delivery of the agreement as if the amendment had been made, and testimony was taken on both sides upon that point.

The agreement was prepared in duplicate, from previous instructions therefor, by Mr. H. W. W., of the Jersey City bar, and was executed in his presence. He at the time lived with his father, in the immediate vicinity of the residences of the two parties. All agree that the actual execution of the duplicates took place in the father's house, both parties signing them at one time, and that they were then and there mutually delivered. The question is whether this occurred on Sunday, March 30th, or Tuesday, April 1st.

[Here follows a discussion of the evidence.]

Taking all this evidence together, I come to the conclusion that the agreement was executed on Sunday, the 30th of March, and delivered on that day.

It remains to consider the effect of this fact upon the rights of the parties herein involved. The contract in question contained a lease from Gennert to Wuestner of certain premises in Hudson county at a monthly rent of $45, the same to be used for the manufacture of *photographic gelatine dry plates and films*. It further provided for the sale by Gennert to Wuestner, at prices to be agreed upon, of all goods necessary for the manufacture of said plates and films, Gennert to take pay for the same in dry plates. Further, that Wuestner should give Gennert the exclusive wholesale agency for the sale of the goods so to be manufactured by him, and the retail agency for New York and Connecticut. Further, Wuestner agreed to sell Gennert prepared dry plates in sizes and qualities to suit Gennert, at a discount of

Gennert v. Wuestner.

forty-five per cent. from the list price then in common use. Wuestner further agreed to purchase all his materials from Gennert and to pay balances on the first day of each month, and to pay Mr. Gennert a fixed commission on all sales made by Wuestner of his product to other parties during the term of the lease and agreement, viz., five years.

The law governing this case seems to me to be entirely settled in this state by the cases of *Reeves* v. *Butcher, 2 Vr. 224,* and *Cannon* v. *Ryan, 20 Vr. 314,* in the supreme court, and *Ryno* v. *Darby, 5 C. E. Gr. 231,* and *Nibert* v. *Baghurst, 2 Dick. Ch. Rep. 201,* in this court. The contract is wholly void and incapable of ratification, and must be entirely ignored in dealing with the business transactions between the parties, precisely as though no such writing had ever existed. The case is not complicated by any circumstance of payment of money, delivery of goods or possession of the demised premises having been made on Sunday. I infer from the evidence that the defendant was already in possession of the demised premises under a former arrangement. If this be so the case falls directly within the ruling of the supreme court in *Cannon* v. *Ryan, supra,* where it was held that if a tenant already in possession under a lease at a fixed rent remains in possession after the end of his term and after notice served upon him on Sunday that after the expiration of his term his rent would be increased, he does not thereby become liable to pay the increased rent. In this case, if the defendant was in possession under a fixed rent, such rate of rent will continue, except so far as it has been changed by the voluntary action of the parties. So, with regard to goods sold by defendant to complainant, the prices fixed therefor by the agreement must be wholly ignored. If any settlements have been made of either rents or goods sold upon accounts stated, such settlements will not be disturbed by the finding of this court that the contract is void, but will stand as the voluntary act of the parties. Neither party will be entitled to call upon the other for any accounting under the contract in question. Complainant cannot have commissions on sales by defendant of his own wares to other parties, and defendant cannot have an

20

account of sales made at retail by complainant in places prohibited by the contract.

The main object of the bill was to reach commissions on sales made by defendant of his own product provided for under the contract. If the illegality of the contract had been set up in the answer in the first instance, and that issue had been, as it should have been, tried at the start, I am inclined to think that the bill should have been dismissed on the ground that there was no occasion to come to this court. The defendant, however, put himself in his answer on different grounds, and added a cross-bill calling on complainant to discover sales made in violation of the contract, which he has done; and it was not until after all of this proceeding had taken place, and the parties had gone to trial, that the defence now established was set up.

Under these circumstances, as there are unsettled mutual mercantile accounts between the parties, which, if sufficiently complicated, give this court jurisdiction, I think the bill should be retained and a reference made to take and settle the account. The evidence already taken on that part of the case will be used before the master.